INHABITANTS OF SMITHFIELD *vs.* INHABITANTS OF WATERVILLE.

*Pauper supplies—furnished by one overseer.*

United action upon the part of overseers of the poor in furnishing supplies to one falling into distress in their town is not necessary to the interruption of the running of the time in which a settlement will be gained, provided a majority of the board, upon learning the facts, ratify the action of their colleague in affording the relief.

A verdict will not be set aside on account of the reception of testimony legally inadmissible, if it be immaterial and entirely harmless.

ON EXCEPTIONS AND MOTION FOR A NEW TRIAL.

ASSUMPSIT, for supplies furnished one Daniel Rowe, in January and February, 1871. It became material to the plaintiff's case

to show that said Rowe received supplies in 1867, otherwise he would have acquired a settlement in Smithfield. The plaintiffs introduced evidence tending to show that said Rowe received supplies at that time, and that notice was given to the overseers of Waterville of the fact; and the plaintiffs contended that the overseers of the poor of Waterville took charge of said Rowe and furnished him with further supplies, although he continued to remain in Smithfield. To establish this claim they called one James Rowe, who testified that he was acquainted with one Hatch, who was, at that time, one of the overseers of the poor of Waterville and resided at West Waterville, but is now deceased, and that he saw said Hatch about the time of the alleged supplies, on the highway near the house of a Mr. Tibbetts in Smithfield, (when he was on his way up, but nearly a mile and a half from said Rowe's) in conversation with other persons. He was thereupon asked by plaintiffs' counsel to state what Hatch said about Rowe's having help. The defendants' counsel objected to such statements as inadmissible. The court overruled the objection, and the witness was allowed to state that he heard Hatch say that Waterville had been notified of Rowe's falling into distress, and he was going to Rowe's to see about it; that he did not see Hatch at Rowe's—had no conversation with Hatch himself upon the subject, but heard him make these statements to others, near the house of Mr. Tibbetts, and that he saw Hatch afterwards on his way back.

Jonas W. Gould testified that in 1867 he was an overseer of Smithfield; that he was informed about the last of April or first of May, 1867, that Rowe needed help, and that he took to his house a peck of corn meal, 10 pounds flour, and $3\frac{1}{2}$ pounds pork; that he was elected to office the first or second Monday of the March previous, and these were the first supplies he had furnished to any person applying as a pauper, after his election; that he had had no previous talk with any of his associates as to furnishing these or any other supplies, and that he furnished them wholly on his own motion without the knowledge of any other overseer of the poor.

The defendants contended that supplies thus furnished were not to be regarded as furnished by the overseers of the poor within the provisions of the statute ; and also that no subsequent ratification by another overseer would render them legal so as to affect the rights of the town of Waterville.

The defendants also contended that there was no legal evidence of any such subsequent ratification, and asked the court so to instruct the jury.

The court instructed the jury thus, upon this part of the case : "For the purposes of this trial, I instruct you that if Mr. Tuttle, the other overseer, afterwards had knowledge of this furnishing of supplies by Mr. Gould to Daniel Rowe, and approved of it and consented to it, and presented a bill for them, in the name of the town of Smithfield, to the overseers of Waterville, it would have the same effect as though there had been a previous consultation between them about it.

"Now you are to determine from the evidence whether there was such a ratification of that act by Mr. Tuttle. If you are satisfied that there was, then it becomes a vital question whether Daniel Rowe was really in distress and in need of relief when these supplies were furnished in 1867."

To the foregoing rulings and refusal to instruct the jury, the defendants excepted.

There was also a motion filed for a new trial, but it presented only a question of the effect of evidence.

*D. D. Stewart* for the defendants.

To prevent Daniel Rowe's five years' residence in Smithfield from giving him a settlement there, it was necessary to prove the furnishing of pauper supplies. It was attempted to show that he was so aided both by Smithfield and Waterville. It would be immaterial by which town they were provided. *Beetham* v. *Lincoln*, 16 Maine, 137 ; *East Sudbury* v. *Waltham*, 13 Mass., 460 ; *Taunton* v. *Middleborough*, 12 Metc., 35 ; *Choate* v. *Rochester*, 13 Gray, 92 ; *Oakham* v. *Warwick*, 13 Allen, 88. It was as to the aid by Waterville that James Rowe testified to Hatch's decla-

ration of notice, &c. This statement, if made by Hatch, was of a past transaction and not admissible. *Franklin Bank* v. *Cooper*, 39 Maine, 542; *Lime Rock Bank* v. *Hewett*, 52 Maine, 531; *Partridge* v. *White*, 59 Maine, 564; *Haynes* v. *Rutter*, 24 Pick., 242; *Coit* v. *Howd*, 1 Gray, 547. It was not admissible for any purpose. *Penn* v. *Turner*, 10 Maine, 185; *New Bedford* v. *Taunton*, 9 Allen, 207; *Dartmouth* v. *Lakeville*, 9 Allen, 211, note.

Inasmuch as it is impossible to tell upon which ground the jury rendered their verdict, it should be set aside if improper testimony was admitted as to aid by either town. *Leonard* v. *Smith*, 11 Metc., 330.

Less than a majority of an official board can do no binding act. *Boothbay* v. *Troy*, 48 Maine, 560.

The void act of a public agent is not susceptible of ratification. *Richmond* v. *Johnson*, 53 Maine, 437; *Argyle* v. *Dwinel*, 29 Maine, 29.

*S. D. Lindsay* and *H. & W. J. Knowlton* for the plaintiffs.

APPLETON, C. J. This is an action of assumpsit for supplies furnished one Daniel Rowe.

The case comes before us upon exceptions to the rulings of the justice presiding, and upon a motion to set aside the verdict as against the evidence.

The settlement of the pauper is in either the plaintiff or defendant town. It seems to be conceded that the pauper had acquired a settlement in the plaintiff town by five years continuous residence, unless the jury were satisfied from the evidence that supplies had been furnished him in 1867. The rights of the parties mainly depended upon the validity of the supplies then alleged to have been furnished.

Jonas W. Gould, an overseer of the poor of the plaintiff town, testified that he was informed about the last of April or first of May, 1867, that Rowe needed help, and that he took to his house a small quantity of corn, flour and pork; that he had been elect-

Smithfield *v.* Waterville.

ed to office the first or second Monday of the March previous, and those were the first supplies he had furnished to any person applying as a pauper after his election ; that he had had no previous talk with his associates as to furnishing these or any other supplies, and that he furnished them wholly on his own motion without the knowledge of any other overseer.  He further testified that it was the custom, when there was an urgent call, to furnish immediate relief, without consulting the different members of the board.

The defendants contended that supplies thus furnished were not to be regarded as furnished by the overseers within the provisions of the statute, and that no subsequent ratification by another overseer would render them legal so as to affect the rights of the town of Waterville ; and that there was no legal evidence of any subsequent ratification, and requested the court so to instruct the jury.

The instruction given upon this part of the case was in these words: "For the purposes of this trial, I instruct you that if Mr. Tuttle, the other overseer, afterwards had knowledge of this furnishing of supplies by Mr. Gould to Daniel Rowe, and approved of and consented to it, and presented a bill for them, in the name of the town of Smithfield, to the overseers of Waterville, it would have the same effect as though there had been a previous consultation between them about it.  Now you are to determine from the evidence whether there was such a ratification of the act by Mr. Tuttle.  If you are satisfied there was, then it becomes a vital question whether Daniel Rowe was really in distress and in need of relief when these supplies were furnished in 1867."

These are the only instructions to which exceptions were taken. It may be affirmed, therefore, that all needed and proper instructions applicable to and required by the case, were given.

The inconvenience of requiring the united action of all the overseers in each case of distress and particularly when relief is urgently and immediately required, is sufficiently obvious.  Accordingly, in *Windsor* v. *China*, 4 Maine, 298, it was held that sup-

plies furnished by order of one of a board of overseers acting under a parol agreement with the rest as to the general manner of executing their office, are supplies furnished by "some town," within the statutes of 1821, c. 122, § 2. In *Fayette* v. *Livermore*, 62 Maine, 229, it was held not necessary, that a majority of the overseers should make a personal examination as to the necessity for supplies. One may act upon information derived from one of his fellows, and if he ratify an order previously given for supplies by his associates, it is sufficient to constitute a furnishing by the town. In *Lee* v. *Deerfield*, 3 N. H., 291, the court say : "we are of opinion, that, when one of the selectmen of a town orders supplies to be furnished a person entitled to relief, the assent of the other selectmen is to be presumed, because it is their duty to assent. It would be extremely inconvenient, if no supplies could be furnished paupers, without the express consent of a majority of the selectmen, while no inconvenience can result from holding, that proper supplies, furnished on proper occasions by order of one of the selectmen, shall bind the town in the same manner as if furnished by the express order of all the selectmen." These views, more stringent than those of this court, received the sanction of the same court in subsequent cases where the same question arose. *Andover* v. *Grafton*, 7 N. H., 315 ; *Mason* v. *Bristol*, 10 N. H., 36 ; *Glidden* v. *Unity*, 33 N. H., 577. Our rule is, that one overseer may in a proper case furnish supplies to a distressed pauper by virtue of precedent authority, or his act, without such authority, may receive a subsequent ratification. *Boothbay* v. *Troy*, 48 Maine, 560.

When supplies have been furnished by one overseer, and the bill for such supplies is presented to the town where the residence of the pauper is claimed to be, by another overseer who had knowledge of the furnishing of these supplies, it was properly submitted to the jury to determine whether such overseer by presenting the bill for payment ratified the same, if special ratification is to be regarded as necessary, where needed supplies are furnished in good faith to relieve existing distress.

It appears that one Hatch since deceased was in 1867 one of the overseers of the poor of the defendant town. A witness called by the plaintiffs was permitted to state, notwithstanding the objection of the defendants, that he heard Hatch say that Waterville had been notified of Rowe's falling into distress and that he was going to see Rowe about it;—that he had no conversation with Hatch himself upon the subject, but heard him make these statements to others, and that he saw Hatch on his way back.

These statements were clearly inadmissible to prove notice to the defendant town. But the fact of notice was not denied nor even questioned.

It appears from the evidence offered by both parties that the 'defendant town was notified in 1867; that Hatch returned an answer to such notice; that he visited the pauper; that the bill for supplies then furnished was presented to the overseers of the poor of Waterville for payment, and that they paid the same. The fact of notice in 1867 was not in controversy. The statements of Hatch, though legally inadmissible, as they relate to a fact unquestioned, and indeed conceded, can afford no ground for a new trial. Whether received or excluded, they were alike immaterial and harmless. The defendants were in no conceivable way aggrieved by the admission of this testimony.

The exceptions are not sustainable.

The evidence offered was contradictory. Perhaps some of the evidence might not have been admissible if objection had been duly taken thereto. Having been received, the jury properly acted upon it as, had objection been made, the facts might have been offered in unexceptionable form. The case was submitted to the jury under instructions to which no valid exceptions have been taken. It is not enough, that the court might have come to a different conclusion. The infirmative and contradictory evidence offered by the defendants and enforced by the able argument of their learned counsel, failed to satisfy the jury of the falsity of the testimony introduced by the plaintiffs. Of its truth or its falsehood, the law has made them judges. A mere difference of opinion as

to the relative weight to be given to conflicting witnesses, will not justify our interference. *Exceptions and motion overruled.*

DICKERSON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.